Case number 23-1626 for Northern District of Iowa, Nancy Burke et al. v. Lippert Components et al. Mr. Reeves? May it please the Court, John Reeves for Appellates the Burke Family. Iowa law is, strongly indicates that the issue of successor non-liability is an affirmative defense and this goes to my first issue. The District Court granted summary judgment to Lippert and LCI Industries below, primarily on the ground that successor non-liability is not an affirmative defense and that because, according to the District Court, there was no question that the asset purchase agreement did not transfer liability for the quickie step to Lippert and LCI, that they could not be liable. This is wrong for several reasons. First, as a diversity jurisdiction case here, we look to the rulings of, in this case, the Iowa Supreme Court. The Iowa Supreme Court has never definitively determined whether successor non-liability is an affirmative defense, but in the closest case that has come to examine this, it has strongly indicated that... I don't think this issue is important. May I ask a question? Do you think it's important? Well, to begin with, I don't think you appealed the District Court order that made the ruling that ESLP must steer the ship. That was made in response to ESLP's motion to dismiss the third-party complaint when it was first filed. Sure, well, it's both. Pardon? Well, I think it applies in both contexts. So that issue, to me, is established against you. I'm so sorry. I honestly don't understand how I could have appealed it. Your notice of appeal did not name that order. Well, that issue actually goes to the merger doctrine. And under the merger doctrine, under the new form of the Federal Rules of Appellate Procedure, they explicitly declare that as long as you cite the final matter being appealed, all prior orders are explicitly merged into that. It's in the advisory committee notes, Your Honor. I don't care about them. Okay, fair enough. Well, it is the thing now. And the rule itself, under Federal Rules of Appellate Procedure 3, I apologize, it explicitly now says that it is not necessary to designate any of the prior orders that merge into the final order. The final judgment here is the voluntary dismissal of the third-party claims. This is actually, if you look at what the plain text of the Federal Rules of Appellate Procedure say, they have, and I believe they were revised in August of 21, Your Honor. It was either August of 21 or 22 that they were revised. They now explicitly incorporate the merger doctrine. As long as you appeal whatever the- Why does that apply to the third-party complaint ruling? Because, Your Honor, all rulings until the final judgment are interlocutory in nature. You can say that and people, that's not, there's not, no established law on this. Well, the rules now explicitly, so Your Honor- I don't consider it, I've read it, I don't consider it explicit. You, I- I don't think it overrules a circuit law that is quite complex on this question. Well, respectfully, Your Honor, I will respectfully disagree on that. And I obviously, that's not my position. But I do believe that the notice of appeal does incorporate those prior rulings. And as I said, I know obviously you strongly disagree with what the advisory committee notes may say. But it's my- I don't strongly disagree. I disagree that they're controlling. Well, I, I would argue that they are. I would argue that they are.  Well, I think it's a Supreme Court case for that. There have been no Supreme Court case, you mean on advisory committee notes in general? Yes. They're, well, at the very least, they're strongly persuasive, I believe. And- They can be. And, and in this case- They're not per se strongly pervasive. So, I'm probably, that word. I understand it, Your Honor. So, no. The, the point is that if you look at the advisory committee notes combined with the rule itself, there's, there's two principles going on here. One, only a final judgment- I don't want to take the whole argument up with this. What was your point about Iowa law? You seem to think there's some indication in Iowa law that, that you're right about affirmative defense. What case- Yes, Your Honor. That is the- Arthur Elevator case? Yes. The Grove case. That is the only Iowa Supreme Court case that has come close to examining this. And while it didn't explicitly determine it, what that involved was a farmer counterclaimed against an elevator company for, for services that allegedly owed, that allegedly owed the farmer. The, the services in question were actually performed by a predecessor that the elevator company bought. And during trial, the elevator company's president was asked by the farmer's council, did you, did you purchase these assets? And the president denied it. Now, on appeal, the elevator company argued that this was an affirmative defense of success or liability. The, the Iowa Supreme Court said, well, we don't need to address that because even assuming for the sake of argument that it is, the company's, the council never objected to this below and thus amounted to- That was my understanding of the case. I just don't understand why you think that helps you. All they said was, we'll assume it for the sake of analysis. Sure. That, that means it could go either way. It, it is. It, it is. I, I think it's interesting that they would go that far because that, that is, that is the closest case that we have one way or the other to- I don't know what you mean by go that far. Courts often do that. They just say there's no reason to get into this issue. The parties might have disputed it. It's immaterial- Mm-hmm. To the decision, so they skip over it. I understand your point, Your Honor. I understand your point. Well, if we go beyond that case, what else is there to help us figure out the question of affirmative defense versus claim? Sure, sure. I understand, Your Honor. I guess the only other thing we have is just general principles of what is an affirmative defense. You assume for the sake of argument that the claim is true and that there's additional facts. And I would suggest that there are additional facts here that they need to affirmatively prove that they did not transfer the, transfer the liability. There, there, I will admit there is not much case law on this. Did the, did the district court give analysis on this issue and whether or not it's affirmative defense? The, the, the court concluded it was. It, but it, it, it did in a bit of a conclusory manner to be honest, Your Honor. It really did not give much in-depth legal analysis as to why it is. I will say, and this goes. You mean the way it isn't? I, I apologize. Okay. The way it is. So you think that there is a holding, a ruling from the district court on that particular issue? Yes. I do believe there is a holding on that. But even assuming for the sake of argument that it is not an affirmative defense, if we go to the second point, the APA agreement explicitly has, the asset purchase agreement explicitly has language in it where it says that they won't assume liability. That there's an exception that provided that respect to incurring liabilities. You mean the indemnity provision? The $250,000? Yes. Yes. And I don't see your, your. How can that, how can that trump an explicit statement that this is not, that this is not a retention of liability? Because, Your Honor, because actually of how it defines the term losses. It says $250,000 for losses. You know, that, that's, that's so many, so, so much ambiguous inferencing making as to take on an explicit statement that, that ESL, it steers the ship. Sure. Well, respectfully, Your Honor, I would deny that there's ambiguity, at least in terms of how it defines losses. Because it plainly includes the term liability and, and losses. And I, and obviously we, we, it, it, I, I understand the concern about ambiguity. And I would actually concede your point, Judge Loken, if we did not have a definition for the term losses here. That would by itself be perhaps be ambiguous. But the fact that the, the, the, that the purchase agreement itself explicitly defines losses to include liability. That gives us a different situation here. That's, so, so I, I, that's, I would respectfully suggest that. And. Well, now. He, the, the motion to dismiss the third party complaint was denied. Yes. So the district, the district court treated ASLP as defend, as defending. In a, at least implicitly ruled against you on this point. Yes. Yes. And then, and then that third party complaint was voluntarily dismissed when. When we lost on summary judgment below. Got moved by success. Yes. So to speak. Yes. Yes. So you, you don't, you don't have anything going except what you'd like us to read into stuff that was never ruled on or if ruled on was ruled adversely. Well, it was, well, it's my position it was ruled adversely. And to the extent that there's a silence about it being ruled adversely, you, you, there's a presumption, I believe, that when the district court doesn't give a reason for ruling adversely, the reasons for that are the reasons raised. You know, okay. Both, both of these issues, the waiver and, and this one. Yes. Opposing counsel says they weren't presented to the district court. So, so give me sight. That, that is, that is simply not true, your honor. So, in opposing summary judgment, so as far as the affirmative defense issue. In opposing summary judgment, we explicitly argued that, I'm quoting here, Lippert never plead, pled, or asserted the successor liability as a defense in any discovery response or pleading. And that is page 1,033 of the Joy Appendix, pacer document 108 at page three. And we also, we also took issue with Lippert's failure to plead or even identify Iowa's successor liability doctrine as a potential affirmative defense. Again, that's on page 1,033 of the Joy Appendix. We explicitly raised this in our opposition to their motion for summary judgment. And when appealing a grant of summary judgment for preserving it, it's sufficient as long as the party that, it's easy when you, I apologize, let me rephrase that. When you're appealing a grant of summary judgment, the preservation issue is, did you raise these arguments in your opposition to summary judgment? And that's my position that we did. It's, it's, it's pretty clear in here that we did. And so, so, so that's what I have to say as far as that goes. And having said that, unless there are any further questions at this time, I'll remain, I'll, I will, I apologize. I will reserve the remainder of my time. Well, just on this waiver point, I don't know that you waive something in this complex context. Given the way all these issues came up, waiver seems awfully, awfully harsh. And I don't know that there's a case that supports it. It's an, I'll admit this is an unusual procedural posture, Your Honor. And I have not found much case law one way or the other on it, as far as that goes. Thank you. I'll reserve the rest of my time. Thank you. Mr. Lindebeck, I don't understand why two lawyers are needed. But go ahead. May it please the Court, Mr. Reeves. Your Honor, I would plan to reserve, or talk for the first ten minutes, and give Mr. Dewin his opportunity to answer questions and make comments on behalf of his client. If the Court does not see that necessary, I will leave that up to Mr. Dewin. No, the time is for you to decide. Just to briefly discuss what was brought up by the Court in the questioning of Mr. Reeves. My position and my client's position is that Arthur Grove does not stand for the proposition that successor non-liability or successor liability is an affirmative defense. As a matter of fact, on page 390 of the Arthur Grove case, the Iowa Supreme Court specifically says they're not ruling on that issue. The Court then goes on to find that the plaintiff in that case was a mere continuation of its predecessor, which is one of the four exceptions to the general law in Iowa that a successor is not liable for the issues of its predecessor. As it relates to the issues before this Court on successor non-liability and then mere continuation, we did write in our brief that those were not briefed before the Court. While I will admit to the Court in its resistance that they raised the issue of successor non-liability being an affirmative defense, in the 32-page brief in resistance to our motion for summary judgment, it was not briefed before the Court. Similarly, below, this issue of the APA and liabilities, whether assumed or not assumed in the indemnification section of 2.2 G3, was not the issue either. Below, they argued that Lippert was a mere continuation of Actuant or the corporation now known as Interpac. So on those two issues, I would say that they were not before the District Court in response to Judge Kelly's question regarding Judge Williams' ruling on this issue of successor liability. I do not believe the Court addressed successor non-liability as a holding. While I appreciate Mr. Reeves saying that it did, I just do not read that the Court addressed that. When you say that, you mean as an affirmative defense? As an affirmative defense, Your Honor. I apologize. Yes. However... Well, is that issue before this Court or not? I don't believe so, Your Honor. Why not? I don't believe it was properly raised below. Because it wasn't in the 30-page brief? Because it wasn't in the 32-page resistance. And you don't think the judge ruled on it? And I don't think the judge ruled on it. Humoring the opposing side for a moment, what's your best authority that the question would not be an affirmative defense, but rather an element of the claim? Sure. So it's not listed in Rule 8c as an affirmative defense. It's not listed in the Iowa Rules of Civil Procedure as an affirmative defense. I have a secondary source written by Mr. Lindahl that doesn't list it as an affirmative defense in the Iowa Civil Practice Series. No Eighth Circuit case has held that it's an affirmative defense. No other Iowa Supreme Court case has held it as an affirmative defense. And Judge Colleton, moreover, it doesn't meet the definition of an affirmative defense. This is not something that would require the plaintiff to be put on notice because they could prove everything in their petition and still lose. The fundamental heart of their case is that, or at least in the petition, was that, in this case, Lippert manufactured, designed, and allegedly failed to warn on a products issue. Well, inherently to do that, you have to prove that Lippert manufactured, designed, and needed to provide a warning to a consumer. Well, the successor non-liability is not an affirmative defense. It's the plaintiff's burden to prove all those elements. And so here, Lippert just, and at the time of this step being manufactured in this case, there was, Lippert was not manufacturing or designing the step. But that sort of subsumes the affirmative defense, though. It's sort of, well, no, we didn't manufacture it. Oh, because we purchased this from someone who did, and by the way, there's non-successor, non-liability here. I would disagree with that, Your Honor. In the petition, the petition on paragraphs 11 and 12 of the petition alleged that Lippert manufactured the step at issue, and I believe paragraph 12 says a similar thing, in which is denied. The denial would put, or should put plaintiff on notice that they might have sued the improper entity. Moreover, the fact that it's an affirmative defense, it's the general law of Iowa, not an affirmative defense that needs to be pledged. It's similar to comparable fault, that it is an affirmative, it's not necessarily, it's an affirmative defense. So you could prove up that this was negligently manufactured, there was something wrong, there's a design defect. You can prove up all of those facts, but because you've got the wrong named defendant, you're saying that that's what makes this different from the traditional affirmative defense? That's correct, Your Honor. And so you think it would be an affirmative part of the plaintiff's case to show that your client accepted liability as a successor? Yes. You could prove that on a certain set of facts, right? Right, that's correct, Your Honor. The plaintiff bears the burden under the general law of Iowa to show that a successor is liable for its predecessor's pre-acquisition liabilities or assets. What kind of proof would be sufficient to show that? Sure, there are four general exceptions. There's the mere continuation doctrine. There are, which was raised below, and those issues usually involve similar owners or shareholders, stockholders. A simple change from, in the Arthur Growth case, there was from a corporation to a partnership or maybe vice versa. That simply is not a case here either. They're two wholly separate entities with different shareholders, different directors, different stockholders. What about, there are situations when you could have success liability even when there's a change in ownership? Sure. Yeah. You can make provisions for that to occur. By contract? By contract, certainly. The other exceptions involve some type of fraud or other types of maybe document. So your point is they would have had to come forward with proof of one of these scenarios? That's correct, Your Honor, yes. And they have not met that burden of proof either below or on appeal. Technically it's by contract, as in Ronico. Yes, and that's the... It is or isn't. And there's a contract that's on point. It just doesn't get the job done for plaintiffs in the district court's view. Maybe not. Correct, Your Honor. If he's right about the APA, then that would be enough if it was an assumption of liability. If that exception on indemnification, if the limited indemnification were held to be not a transfer of the liability, then they'd have that proven. They haven't proven that they've sued the right person. That's correct, Your Honor. If in plaintiff's reading of the APA, if the defense cost indemnification provision of the APA is read to say something different than how it actually reads, I would submit that the plaintiff might be successful in that claim. If it's sent there alone without the more specific transfer or non-transfer of the liability. That's correct. However, it doesn't sit there alone. The 2.2 states that liabilities and obligations shall remain the sole liabilities and obligations of the seller and the parent and shall be paid and performed and discharged as they come due. The plaintiff relies on subparagraph or subsection G3, which is if you read it as a whole is what basically turns into a defense cost indemnity agreement, especially when you read section 8.1 of the APA, which defines losses to include things such as out-of-pocket expenses, reasonable attorney's fees, expert fees and consultant fees. How far were the parties into the litigation before this particular provision came to light? It just seems like if this really is as you, if it reads as you say, it's indemnification, right? That's your point. Isn't that something you say right up front? Sure. Your honors, the presence or the acknowledgement or the notification to plaintiffs that Interpac was involved in terms of making the step was produced to appellant's counsel in January of 2022. The indemnification provision that we've been discussing here today was provided in our motion to assert a third party against Interpac, which was filed in May. The entirety of the APA was found to have been produced to the appellant in June of 2022. And for the remainder of those proceedings through December of 2022, appellant chose not to act against Interpac other than serving discovery. When was this case filed? This case was filed, your honor, in June 30th of 2021. Right. The deadline to amend, your honor, was November 29th of 2021. A discussion of why it wasn't really put forth is found in document 35 from Magistrate Judge Mahoney's ruling on our motion for good cause to assert our third party complaint against Interpac. If there are no further questions, I will allow Mr. Due an opportunity to speak on behalf of his client. Thank you very much, your honors. May it please the court? Counsel? Counsel, my name is Steve Duen for Interpac. Very briefly, because Mr. Lindebach just mentioned the good cause standard, I did want to address that issue with respect to the portion of the brief that Interpac took up as part of this case. And that is a flurry of motions that was delivered to the court by the plaintiff below out of time with respect to the scheduling and trial management order. When these motions came out of time, the motions are subject to Rule 16b-4 and the good cause standard. I believe the court here is well aware of the chronology. But just very quickly, because I have very little time, the answer of Lippert originally was in July of 2021 denying that they manufactured the steppit issue. The January 2022 email that Mr. Lindebach mentioned, which is not just some innocuous email, but rather it's an open invitation to the plaintiffs below to bring a claim against my client. In summary, I think the ruling on this flurry of motions below from Judge Williams of the district court, the quote that he makes is present. The record is littered with indications of dilatory behavior and the plaintiffs below cannot meet the good cause standard. Thank you. If we agree with you on the good cause issue, but hold that for some reason the case has to be remanded on the successor liability issue, does that put you back in the case? A voluntary dismissal? That's probably not in the record. Well, Your Honor, and I believe we might all be in somewhat uncharted territory as to how things get resurrected. I think it would just have to begin anew, I suppose, if Lippert is to be sued and I'm to be third party. There isn't a clear answer. Right. I agree. That's a helpful answer. Thank you. Mr. Bonner? Very quickly and briefly, just to address the good cause standard in further context. While it is true that my clients below were made aware of the APA agreement in January of 22, this was several months after the Rule 26 deadline had expired on October 8, 2021. And at no time by that point in their initial Rule 26 disclosures was either the APA agreement or EDPAC or ESLP identified in those Rule 26 disclosures. And just the only other thing I have to add is we... The timing, it was, one of them was disclosed in the January 2022. So what... Yes, my only point is that that was three months after the Rule 26 disclosures had closed. And as far as preservation of the second issue of the language of the $250,000 of the APA agreement, which I believe is a retention of liability, we raised that below in opposing Lippert's statement of our controverted material facts. Citing to that portion of the APA, you can find that on page 1039 of the Joint Appendix. And unless there's any further questions from this court, I would respectfully ask that this court reverse. Thank you, Your Honor. What page did you say is at page 1039? Yeah, yeah. I'm sorry, Your Honor. What document is at 1039? It is our response in opposition to Lippert's statement of our controverted material facts. It goes back to my question before, which you got half the answer. And this is the second half. Yes, yes. Preserving. Yes, preserving. And the Iowa District Court does the numbered paragraph thing, and this is in response to a particular numbered paragraph. So if there are no other questions... I'm sorry, Judge Kalten, did you have something else? I'm sorry. No. Okay, thank you. I would ask that this court reverse. Thank you, Your Honor. Very good. The case has been thoroughly briefed. It's confusing, but oral argument has helped on that regard. And we will take it under advisement.